IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
                              )
STACI PINKETT,                )
                              )
      Plaintiff,              )
                              )
                              )
          v.                  )   1:08cv790 (JCC)
                              )
                              )
APEX COMMUNICATIONS CORP et al., )
                              )
                              )
      Defendants.             )
                              )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendant Apex Communications Corp. and Defendant Fred Adams's Motion for Summary Judgment.  For the following reasons, the Court will deny Defendants' motion.

### I. Background

The following undisputed facts are gathered from the parties' statements of disputed and undisputed facts.  Staci Pinkett ("Pinkett" or "Plaintiff") began working for Apex Communications Corporation ("Apex") in September 2004 as an administrative assistant.  Approximately one month after being hired, Pinkett became Apex's Finance and Administration Manager.  This position gave Pinkett intimate knowledge of Apex's proprietary and confidential information.  At some point during

1

Plaintiff's employment, Apex had fifteen or more employees.  One of these employees is Fred Adams ("Adams"), Apex's President and Chief Executive Officer.

During her employment with Apex, Ms. Pinkett received a copy of Apex's Employee Handbook ("Handbook").  The Handbook prohibits employees's disclosure of Apex's confidential business information and trade secrets.  It also states that such disclosure, the improper use of Apex's equipment, "insubordination or other disrespectful conduct," excessive absenteeism, absence without notice, unauthorized absence from the workstation, violation of personnel policies, and unsatisfactory performance are all grounds for termination. Beyond the general policy in the Handbook stating that excessive or unexcused absences are grounds for termination, Apex had no specific leave policy in place for Pinkett.  The Handbook also sets out a progressive discipline policy, which Apex did not follow with respect to Pinkett.

Between January 29 and July 18, 2007, Pinkett was absent from work for at least 35 days.  These days were accounted for as a combination of vacation, personal time, and sick leave and include Pinkett's two-week absence with one day's notice for a family emergency.  Before leaving for those two weeks, Pinkett prepared instructions for Adams to follow in her absence and left him her cell phone number.  Those instructions convey Pinkett's

2

intent to continue to perform some of her duties while she was out of the office.

Either during or after her employment with Apex, Pinkett joined an organization called EMS that was started by Troy Lumpkin ("Lumpkin"), another Apex employee.  During two of her absences from her work at Apex, Pinkett attended a Pre-Proposal Conference at Fort Eustis, Virginia and visited Fort Lee, Virginia for a site assessment related to potential bids on government contracts by EMS.  Between October 2006 and October 2007, EMS bid on government contracts for which Apex was not eligible to bid or was uninterested in bidding.

On March 11, 2007, Apex submitted an employment advertisement in the Washington Post seeking an "administrative assistant/bookkeeper" to take on human resources and office management responsibilities, and some proposal preparations.  The advertisement stated that applicants should possess a working knowledge of QuickBooks Pro and Microsoft Office.[1]

On July 3, 2007, Pinkett and Adams had a negative interaction.  The affidavits submitted by Adams and other current Apex employees assert that Pinkett was insubordinate to Adams; Pinkett's affidavit asserts that Adams was hostile to her and that she chose not to respond to his hostile behavior.

---

[1] Apex asserts that it was searching for Pinkett's replacement; Pinkett asserts that it was searching for administrative support.

Pinkett filed a gender-based pay discrimination claim with the United States Equal Employment Commission (EEOC) on June 4, 2007.  Apex learned of this claim on June 18, 2007 and immediately placed Pinkett on a one-week paid leave of absence. At that time, Adams told Plaintiff that he would investigate her claim, instructed her not to contact any Apex employees or government agencies during her leave, and informed her that he was no longer comfortable working with her.

When Plaintiff returned from leave, Defendants changed her work hours several times, gave her computer to a temporary employee, and told her that there were no tasks for her to perform.  Defendants gave her an old computer but did not provide her with the password to access it.  They also instituted time sheets for employees.

On July 18, 2007, by means of a letter delivered to her home, Defendants informed Pinkett that they were terminating her employment for insubordination, breach of disclosure and trade secrets, underperformance, unexcused and excessive absences, lack of responsiveness, creation of a counterproductive environment, and concealing and making Apex proprietary information unavailable to Apex management.

Between the time that she was placed on leave and terminated, Plaintiff's doctor found that she developed hypertension and anxiety.

4

On January 25, 2008, Apex filed a lawsuit against Pinkett and Lumpkin in the Circuit Court for the City of Alexandria ("Circuit Court Suit"), alleging six causes of action: breach of duty of loyalty (Count I), intentional interference with prospective business advantage (Count II), fraud (Count III), breach of non-disclosure agreement (Count IV), misappropriation of trade secrets (Count V) and conspiracy to injure Apex in its business (Count VI).

On June 21, 2008, Pinkett filed a voluntary petition in bankruptcy in the United States Bankruptcy Court in the Eastern District of Virginia.  Apex filed a Complaint Excepting to Discharge in that court on September 18, 2008 ("Exception to Discharge").

In the case at bar, Plaintiff filed a First Amended Complaint (Complaint) on March 23, 2009.  Defendant moved for summary judgment on March 30, 2009.  Plaintiff opposed the motion on April 10, 2009 and Defendant replied on April 15, 2009.  This motion is currently before the Court.

## II.   Standard of Review

Summary judgment is appropriate only if the record shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986); *Evans v. Techs. Apps. & Serv. Co.*,

5

80 F.3d 954, 958-59 (4th Cir. 1996).  The party seeking summary judgment has the initial burden to show the absence of a material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  To defeat a properly supported motion for summary judgment, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial."  *Id.* (quotation omitted).  The facts shall be viewed, and all reasonable inferences drawn, in the light most favorable to the non-moving party.  *Id.* at 255; *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 642 (4th Cir. 2007).

### III. Analysis

The Complaint states two causes of action against both defendants: retaliation in violation of the Equal Pay Act (Count I) and retaliation in violation of Title VII (Count II). Defendant moves for summary judgment on both counts.  At the hearing held on April 17, 2009, Plaintiff withdrew Count II against Defendant Adams.  The Court will address Plaintiff's remaining claims below.

A.   Count II: Retaliation in Violation of Title VII

The Complaint alleges that Defendants retaliated against Plaintiff for filing a claim of discrimination with the

6

EEOC in violation of Title VII, Civil Rights Act of 1964, § 701 *et seq.*, 42 U.S.C. § 2000e *et seq.*  Compl. at ¶ 18.  According to Plaintiff, Defendants' retaliation took three forms: (1) terminating Plaintiff's employment, (2) filing the Circuit Court Suit, and (3) filing the Exception to Discharge.  *Id.* at ¶ 12. Plaintiff further alleges that Defendants retaliated against her willfully and with malice.  *Id.* at ¶ 20.  Finally, Plaintiff asserts that the retaliation resulted in her loss of pay and other benefits, as well as physical injuries.  *Id.* at ¶ 19.

       1.  *Plaintiff's Prima Facie Case*

To successfully state a Title VII claim, Plaintiff must first set forth a prima facie case.  In this Circuit, to establish a prima facie claim for retaliation under 42 U.S.C. § 2000e-3, a plaintiff must show that: (1) she engaged in a protected activity; (2) the employer took an adverse action against her; and (3) a causal connection existed between the protected activity and the asserted adverse action.  *Beall v. Abbott Labs.*, 130 F.3d 614, 619 (4th Cir. 1997).

Once the plaintiff states a prima facie case, the burden shifts to the defendant to rebut the plaintiff's showing. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  Defendant can rebut a prima facie case by showing a legitimate non-discriminatory reason for the adverse action, after which the burden shifts back to the plaintiff to show that the defendant's

proffered reason is pretextual. *Carter v. Ball*, 33 F.3d 450, 460 (4th Cir. 1994).

### a. Protected Activity

Defendants do not appear to dispute that Plaintiff has stated the first element of a prima facie case, that she engaged in a protected activity. Plaintiff has sufficiently established this element by alleging that she filed a claim for gender-based discrimination with the EEOC on June 4, 2007.

### b. Adverse Action

Plaintiff has successfully stated that her employer took an adverse action against her by alleging that Apex terminated her employment on July 18, 2007. *Hartsell v. Duplex Products, Inc.*, 123 F.3d 766, 775 (4th Cir. 1997) (recognizing that discharge is an adverse employment action). Defendants argue, however, that Plaintiff's allegations regarding the Circuit Court Suit and Exception to Discharge are not qualifying adverse actions.

A qualifying adverse action is one taken by the plaintiff's employer subsequent to or contemporaneous with the plaintiff's protected activity and "that a reasonable employee would have found [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Darveau v. Detecon, Inc.*, 515 F.3d 334, 341-42 (4th Cir. 2008) (*quoting*

8

*Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)).
An employer's decision to file a lawsuit with a retaliatory
motive and without a reasonable basis in fact or law is such an
adverse action.  *Id.* at 343-44 (relying on Title VII case law to
find that an employee had made a sufficient allegation of adverse
employment action to state a retaliation claim under the Fair
Labor Standards Act by alleging that the defendant had filed such
a suit).

Thus, the Circuit Court Suit is an adverse action if
Plaintiff can make a showing that Defendants filed that action
(1) with a retaliatory motive and (2) without a sufficient basis
in fact or law.  Defendants submit that there was no retaliatory
motive behind that suit and that it has a clear basis in fact and
law.  The Court agrees that each of the six claims has a basis in
law.

It also notes, however, that Plaintiff has alleged that
Defendants acted with malice in filing that suit, Compl. at ¶ 20,
and that the claims have no basis in fact, Pl.'s Opp'n Ex. 3 at
¶ 5.  To support the latter assertion, Pinkett relies on her
affidavit and deposition testimony that, contrary to Defendants'
assertions in the verified complaint filed in the Circuit Court
Suit, she did not work for EMS while working for Apex, lie about
her absences, or compete with Apex.  Pl.'s Opp'n Ex. 3 at ¶¶ 8,
9, 12; *id.* Ex. 20 at 14-22.  Viewing all of the evidence in the

light most favorable to the non-moving party, the Court finds that Plaintiff has made a showing, supported by sworn evidence, that Defendants' filed the Circuit Court maliciously and without a sufficient factual basis.

Next, Defendants argue that Apex's filing of the Exception to Discharge was not an adverse action because Apex was required to file it to preserve the grounds of its circuit court suit. *See* 11 U.S.C. §§ 523a(2), 523a(6).  For this argument, Defendants rely on *Gross v. Akin*, 2009 U.S. Dist. LEXIS 16427 *27-28 (D.D.C. Mar. 3, 2009), which held that the mandatory filing of a counterclaim against an employee was not a qualifying adverse action for a retaliation claim.  A full reading of this case shows that it provides no assistance to Defendants.  The *Gross* court based its conclusion on the finding that "filing a counterclaim will not chill plaintiffs from exercising and enforcing their statutory rights because by the time the employer files its counterclaim, plaintiffs have already made their charges and initiated a lawsuit." *Id.* (internal quotations and citations omitted).  That situation is not comparable to that presented here, where Defendants first brought the parties' dispute to court.

Defendants have offered no reason for the Court to find that pursuing claims against a former employee in bankruptcy proceedings is not an adverse action that could dissuade a

reasonable worker from making a charge of discrimination.  *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)). An employee with the knowledge that an employer's claims could follow her through personal bankruptcy could be dissuaded from filing a claim of discrimination.  Further, neither party has alleged any change in Defendants' motives or knowledge of the relevant facts between the Circuit Court Suit and the Exception to Discharge.  Thus, the result of the adverse action analysis will be the same as the result of the Court's analysis of the Circuit Court Suit.  Viewing all the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has made a sufficient showing that Apex filed objections to discharge in the bankruptcy court with malice and without a sufficient factual basis.

c.  <u>Causal Connection</u>

Because the Court finds that Plaintiff has stated the first two elements, it will now address the third: whether a causal connection existed between the protected activity and the asserted adverse actions.  To establish a causal connection, Plaintiff "must have evidence from which a reasonable fact finder could conclude that a causal connection exists between the protected activity and the adverse action."  *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 657 (4th Cir. 1998) (citations omitted).  "[T]he nonmoving party must produce

11

specific facts showing that there is a genuine issue for trial, rather than resting upon the bald assertions of his pleadings." *Id.* (*quoting Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir. 1985), *overruled on other grounds*, 490 U.S. 228 (1989)) (internal quotations omitted).  Thus, Plaintiff must submit some evidence that Apex took the three alleged actions against Plaintiff "*because* [she] engaged in a protected activity."  *Id.* at 657 (emphasis in original).

The first step in this analysis requires Plaintiff to show that Apex had knowledge of Plaintiff's protected activity. The protected activity alleged here is Plaintiff's filing of an EEOC claim; Plaintiff alleges that Defendants were informed of the claim on June 18, 2009.  These allegations satisfy the knowledge requirement.

The second step requires Plaintiff to show a sufficient relation between Defendants' knowledge of the protected activity and the three adverse actions that Plaintiff alleges were taken against her in retaliation.  This causal connection can exist if an employer takes adverse action against an employee shortly after learning of the protected activity.  *Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004) (*citing Williams v. Cerberonics, Inc.*, 871 F.2d 452, 457 (4th Cir. 1989)).  The "temporal proximity between an employer's knowledge of protected activity and an adverse employment action," however, must be "very close."

12

*Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (citations omitted).

Second, in cases where "temporal proximity between protected activity and allegedly retaliatory conduct is missing, courts may look to the intervening period for other evidence of retaliatory animus." *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000) (citations omitted); *see also Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007). Evidence of continuing retaliatory conduct and animus directed at the plaintiff by the defendant during the intervening period can satisfy the element of causation. *Lettieri*, 478 F.3d at 650; *see also Miles v. Dell, Inc.*, 429 F.3d 480, 490 (4th Cir. 2005). For example, a plaintiff stripped "of significant job responsibilities," or subjected to reduced supervisory responsibility or the removal of authority to set prices or meet with clients, can establish a causal link. *Lettieri*, 478 F.3d at 650.

1. *Termination*

Pinkett filed an EEOC claim against Apex on June 4, 2007 and Apex fired her on July 18, 2007, approximately six weeks later. Defendants argue that the "passage of six weeks by itself is insufficient to establish a causal connection." Defs.'s Mem. in Supp at 9. They also argue that intervening circumstances, such as Pinkett's insubordination and her absenteeism, break any

13

causal connection between Plaintiff's EEOC complaint and her termination.  *Id.* at 10 (*citing Jaudon v. Elder Health, Inc.*, 125 F. Supp. 2d 153, 161 (D. Md. 2000) (citations omitted)).

Defendants' first argument is unpersuasive.  In this circuit, a ten-week lapse between the defendant's notice of the plaintiff's protected action and the plaintiff's termination "certainly satisfies the less onerous burden of making a prima facie case of causality."  *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003).  While longer time lapses require the plaintiff to show evidence of ongoing discriminatory animus, *see Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (finding causal connection by means of a seven-month time lapse and evidence of ongoing discriminatory animus); *Miles v. Dell, Inc.*, 429 F.3d 480, 490 (4th Cir. 2005) (finding causal connection by means of a one-year time lapse and evidence of ongoing discriminatory animus), an intervening period of only six weeks can, by itself, show a causal link.  Even if it cannot, however, Plaintiff has submitted sufficient evidence of Defendants' continuing retaliatory conduct and animus during intervening period to show a causal link.

Plaintiff alleges a number of adverse employment actions beginning when Defendants learned of her EEOC complaint. She first alleges that, one day after learning of her complaint, Defendants put her on paid leave for one week and told her not to

discuss the matter with Apex employees or government agencies. She also alleges that, after she returned from leave, Apex changed her work responsibilities, hours, equipment, and general working environment, and that Adams assigned her impossible tasks.[2]  These allegations are supported by Plaintiff's affidavits and deposition testimony.  *See* Pl.'s Opp'n Ex. 3 at ¶ 10-11; *id.* Ex. 20 at 41-53, 83, 94.  Defendants dispute these allegations with their own affidavits.  Defs.' Mem. in Supp. Ex. 16 at ¶¶ 10-13 (Aff. of Adams); Defs.' Reply Ex. 2 at ¶ 4 (Aff. of Adams).  Defendants' evidence does not negate the causal connection that Plaintiff has stated, but show that genuine issues of material fact remain.  The Court finds that Plaintiff has satisfied the causal link requirement and has stated a prima facie case of retaliation with respect to her termination.

The Court also finds Defendants' "intervening circumstances argument" to be unconvincing.  Defendants argue that Pinkett's insubordination and absenteeism "break" any causal connection between Plaintiff's EEOC complaint and her termination, relying on *Jaudon v. Elder Health, Inc.*, 125 F. Supp. 2d 153 (D. Md. 2000).  *Jaudon* held that the sexual harassment of the plaintiff could not be said to "culminate" in

---

[2] Adams's decision to remove Plaintiff's major job responsibilities in July 2008 may qualify as a separate act of retaliation under by Title VII.  *See Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006).  Because Plaintiff has not raised that claim specifically and has proffered sufficient evidence to make out a prima facie case on her existing claims, the Court need not address that theory.

her firing because the harassment stopped when the harasser was reprimanded.  *Id.* at 161.  It specifically held, however, that the plaintiff *did* establish a causal connection between the harassment and her termination based on a temporal connection and intervening retaliatory conduct.  *Id.* at 165-66.  This case clearly provides no assistance to Defendant.

### 2.  *Circuit Court Suit*

Defendants filed the Circuit Court Suit on January 24, 2008, approximately seven and one-half months after it learned of Plaintiff's EEOC claim, on June 4, 2007.  In the Fourth Circuit, an intervening period of seven months is too long to state a causal connection on its own, but can be sufficient if the plaintiff submits sufficient evidence of ongoing discriminatory animus by the defendant.  *Lettieri v. Equant Inc.*, 478 F.3d 640, 650 (4th Cir. 2007) (finding causal connection where plaintiff showed a seven-month time lapse and evidence of ongoing discriminatory animus).

The Court finds that Plaintiff has shown a causal connection between her protected action and the Circuit Court Suit.  The time lapse of seven and one-half months, in conjunction with Plaintiff's evidence of Defendants' ongoing discriminatory animus against her - detailed above in this section - and the reasonable time period required to research and prepare Defendants' fifteen-page verified complaint satisfy

16

Plaintiff's "less onerous" burden to show a causal connection. *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003).

### 3.   *Exception to Discharge*

A similar analysis applies to the Exception to Discharge that Apex filed on September 18, 2008, fifteen and one-half months after learning of Plaintiff's EEOC claim.  The Court finds that Plaintiff has also shown a causal connection between her protected action and Defendants' decision to file their objections to discharge.  It is clear that this time lapse is too long to state a causal connection alone.  *Miles v. Dell, Inc.*, 429 F.3d 480, 490 (4th Cir. 2005) (finding causal connection where the plaintiff showed a one-year time lapse and evidence of ongoing discriminatory animus).  It is sufficient, however, when taken in conjunction with the above-discussed proffered evidence of Defendants' ongoing discriminatory animus against Plaintiff, to satisfy Plaintiff's "less onerous" burden to show a causal connection.  *King v. Rumsfeld*, 328 F.3d 145, 151 (4th Cir. 2003).

### 2.   *Defendants' Rebuttal*

Once the plaintiff has presented a prima facie case, "the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse employment action." *Hill v. Lockheed Martin Logistics Mgm't, Inc.*, 354 F.3d 277, 285 (4th Cir. 2004).  "This burden, however, is a burden of production, not persuasion." *Holland v. Wash. Homes, Inc.*, 487

F.3d 208, 214 (4th Cir. 2007).  As explained below, the Court
finds that Defendants have satisfied this burden by producing
affidavits showing that Plaintiff was fired because of her
insubordination and excessive absences from work and that they
filed suit against her based on after-acquired evidence regarding
her alleged work for EMS, a competing entity.

Title VII's retaliatory discrimination provision was
"not intended to immunize insubordinate, disruptive or
nonproductive behavior at work." *Armstrong v. Index Journal Co.*,
647 F.2d 441, 448 (4th Cir. 1981) (citation omitted).  An
employer retains the right to discipline or terminate employees
for any legitimate, nondiscriminatory reason. *Glover v. S.C. Law
Enforcement Div.*, 170 F.3d 411, 414 (4th Cir. 1999), *cert.
dismissed*, 528 U.S. 1146 (2000) (citation omitted).  In fact,
discharging an employee for well-documented poor attendance is
sufficient to rebut an inference of discrimination. *Warren v.
Halstead Indus., Inc.*, 802 F.2d 746, 754, 756 (4th Cir. 1986).

Defendants assert that they terminated Pinkett for her
February 11, 2007 insubordination, during which she refused to
obey lawful orders from Adams to provide him with a document and
yelled at him in front of other employees.  Defs.' Mem. in Supp.
at 11 (*citing* Ex. 6, Aff. of Robert Leganza at ¶ 4; Ex. 7, Aff.
of Robert Leganza at ¶¶ 4-9; Ex. 16, Aff. of Adams at ¶¶ 10-13).
They also assert that Pinkett was terminated because she "was

18

absent from her job approximately 41 days" between January 29, 2008 and July 18, 2008, the day that her employment was terminated. *Id.* at 12 (*citing* Ex. 4-5; Ex. 16 at ¶ 7 (Aff. of Adams); Ex. 6 at ¶ 3 (Aff. of Robert Leganza); Ex. 7 at ¶ 10 (Aff. of Robert Leganza)). Defendants note that, under the rules and policies set forth in the Handbook, insubordination and excessive absences are clearly stated reasons for which Apex may terminate its employees.

Plaintiff responds that Adams miscalculated the number of days that she was absent and failed to keep proper records of her absences. She does not appear to dispute that she was absent from work for various reasons for at least 35 days during the time period in question. Plaintiff also submits that she was not insubordinate, but that Adams yelled at her and was, at varying times, hostile and cold. None of these arguments negate the fact that Defendants have met their burden of *producing evidence* showing that they terminated Plaintiff's employment for a non-retaliatory reason.

In addition, Defendants have produced evidence showing that Apex filed the Circuit Court Suit because Defendants believed that Pinkett's activities with EMS violated duties that she owed to Apex, contracts that she had entered into with Apex, and Virginia law regarding confidential information and trade secrets. The proffered evidence includes an affidavit by Adams

19

and the verified complaint signed by Adams and filed in the circuit court.  Defs.' Mem. in Supp. Ex. 13 (verified complaint); *id.* Ex. 16 at ¶¶ 7, 8, 14, 15 (Aff. of Adams).

Defendants have represented to the Court that Apex filed the Exception to Discharge, preserving the claims set forth in the verified complaint, for the same reasons that they filed the Circuit Court Suit.  Defs.' Mem. in Supp. at 18.  Based on this evidence, the Court finds that Defendants have successfully rebutted Plaintiff's prima facie case with respect to all three of Plaintiff's alleged instances of retaliation.

### 3.    *Plaintiff's Showing of Pretext*

When a defendant meets its burden of production, "the *McDonnell Douglas* frame-work - with its presumptions and burdens - disappear[s], and the sole remaining issue [is] discrimination *vel non*."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142-43 (2000) (internal quotations and citations omitted). "In other words, the burden shifts back to [the plaintiff] to prove by a preponderance of the evidence that the employer's stated reasons were not its true reasons, but were a pretext for discrimination."  *Id.* at 143 (internal quotations and citations omitted).

Once the question comes down to pretext, a plaintiff "must be afforded the opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant

were not its true reasons, but were a pretext for [retaliation]." *Reeves*, 530 U.S. at 143 (internal quotations omitted).  A plaintiff can do this "by showing that the employer's proffered explanation is unworthy of credence."  *Tx. Dept. of Community Affairs v. Burdine*, 450 U.S. 248 256 (1981) (citation omitted).

In this case, Plaintiff has alleged that she was not insubordinate at work and that Adams exhibited hostility toward her and informed her that he was no longer comfortable working with her after he learned of her EEOC complaint.  These allegations are supported by Plaintiff's affidavits and deposition testimony.  Pl.'s Opp'n Ex. 3 at ¶¶ 10-11; *id.* at Ex. 20 at 41-53, 83, 94.  Defendants dispute Plaintiff's assertions in their own sworn testimony, but these disputes merely show that genuine issues of material fact remain for tr.  *See* Defs.' Mem. in Supp. Ex. 16 at ¶¶ 10-13 (Aff. of Adams); Defs.' Reply Ex. 2 at ¶ 4 (Aff. of Adams).

Plaintiff also disputes Defendants' assertion that they began searching for her replacement in May 2008 through an advertisement in the Washington Post.  Pl.'s Opp'n at 3 (asserting that Defendants were searching for an administrative assistant, not a finance and administration manager).  Finally, she disputes Adams's statements regarding whether he approved her absences from work, how many days she was actually absent, and why her absences during the first half of 2008 resulted in her

termination only after Defendants became aware of her EEOC complaint. *Id.* at 2-3.

With respect to the Circuit Court Suit, Plaintiff has alleged that a number of the facts underlying that suit are false and "almost wholly fraudulent." Pl.'s Opp'n Ex. 3 at ¶ 5. She provides examples of particular allegations that she disputes and on which some of Defendants' six claims rely. *Id.* at ¶¶ 7 (Apex was second out of ten firms submitting proposals and would have won a contract but for Pinkett's misdeeds), 8 (Pinkett provided Defendants with false reasons for her absences from work), 12 (Pinkett participated in proposals on EMS's behalf while employed by Defendants).

Based on these assertions, which are supported (and disputed by Defendants) with sworn testimony, the Court finds that Plaintiff has "offer[ed ] evidence that the events recounted in [the defendant's] affidavit are untrue or that retaliation was the true reason for [the defendant's actions]." *Tinsley v. First Union Nat'l Bank*, 155 F.3d 435, 444 (4th Cir. 1998). These disputes are more than "minor discrepancies" related to Apex's decision to terminate Pinkett's employment and to pursue her in circuit court and in bankruptcy. The Court finds that Plaintiff has submitted evidence that "casts doubt on" the validity of Apex's proffered explanations. *Hux v. City of Newport News*, 451

F.3d 311, 315 (4th Cir. 2006) (internal citation omitted).  These issues belong to the jury.

The Court finds that, viewing all of the evidence in the light most favorable to Plaintiff, the non-moving party, there is a genuine dispute of material fact as to whether Apex's proffered non-retaliatory reasons for taking the three alleged retaliatory actions against Plaintiff are pretextual.  Plaintiff has "set forth specific facts showing that there is a genuine issue," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), regarding whether Defendants' stated reasons for firing her, filing the Circuit Court Suit, and the Exception to Discharge "were not its true reasons, but were a pretext for discrimination," *Reeves*, 530 U.S. at 142-43 (internal quotations and citations omitted).  A reasonable trier of fact could conclude that Apex took these actions in retaliation for Pinkett's protected activity.  Summary judgement is inappropriate on this claim; Defendants' motion will be denied.

B.   Count I: Retaliation in Violation of the Equal Pay Act

Plaintiff's complaint also alleges that Defendants retaliated against Plaintiff for filing a claim of discrimination with the EEOC in violation of the Equal Pay Act.  Compl. at ¶ 16.  According to Plaintiff, the retaliation took three forms: (1) terminating Plaintiff's employment, (2) filing the Circuit Court Suit, and (3) filing the Exception to Discharge.  *Id.* at ¶ 12.

23

The Equal Pay Act ("EPA") prohibits employers from providing unequal pay to an employee because of a person's gender.  29 U.S.C. § 206(d).  The EPA is part of the Fair Labor Standards Act of 1938 ("FLSA") and employs the FLSA's enforcement scheme.  29 U.S.C. § 206(d)(3); *O'Neill v. Allendale Mut. Ins. Co.*, 956 F. Supp. 661, 665 n.8 (E.D. Va. 1997) (The "Equal Pay Act . . . directly incorporates § 215(a)(3) of the FLSA.").  The FLSA prohibits "any person" from discharging or discriminating against an employee because the employee "has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter."  29 U.S.C. § 215(a)(3).

1.   *Defendant Adams, in his personal capacity*

In response to the Court's inquiry at the hearing, Plaintiff's counsel stated that Pinkett is pursuing Count I of this action against Adams in his personal capacity.  Given that the relevant section of the FLSA prohibits termination or discrimination by "any person," 29 U.S.C. § 215(a)(3), it seems clear that Plaintiff can properly bring Count II against Adams in his personal capacity.  Even if that provision were to specify "employers" as the persons for whom termination or discrimination is prohibited, the result is the same.

The law is clear that individuals can be held liable as "employers" under the FLSA.  The FLSA defines an "employer" as "any person acting directly or indirectly in the interest of an

24

employer in relation to an employee." *Id.* at § 203(d).  The definition of "employer" in the Act is "expansive," and an employee may have more than one "employer." *Falk v. Brennan*, 414 U.S. 190, 195 (1973).

Whether an individual is an "employer" under the Act turns on the facts and circumstances of each case.  The majority rule allows an individual corporate officer to be an "employer" under the FLSA – subject to liability in his individual capacity – if he acts as "a supervisor [with] sufficient control over the conditions and terms of the plaintiff's employment." *Kilvitis v. County of Luzerne*, 52 F. Supp. 2d 403, 413 (M.D. Pa. 1999) (citing *Dole v. Haulaway, Inc.*, 723 F. Supp. 2d 274, 286 (D. N.J. 1989)); *see Brock v. Hamad*, 867 F.2d 804, 808 n.6 (4th Cir. 1989); *see also Dole v. Elliott Travel*, 924 F.2d 962, 965 (6th Cir. 1991); *Cubias v. Casa Furniture and Bedding, LLC*, 2007 WL 150973, at *2-3 (E.D. Va. Jan. 16, 2007).

The Complaint alleges that Adams exercised control over Apex's operations, hired and fired Pinkett and other employees, had the power to control the actions of Pinkett and other employees, and set their wages and compensation.  Compl. at ¶¶ 2, 5, 12.  These allegations are amply supported by the evidence proffered by both parties.  Pl.'s Opp'n Ex. 3 at ¶¶ 4, 9, 13 (Aff. of Pinkett); Defs.' Mem. in Supp. Ex. 16 at ¶¶ 3, 5, 6, 10, 15.  The Court finds that Adams is both a "person" and "employer"

under the FLSA.  Plaintiff has stated a claim against him in his
individual capacity.

2.   *McDonnell-Douglas Analysis*

The elements of a prima facie case of retaliation under
Title VII and the FLSA are nearly identical and, therefore, the
result of Defendants' motion for summary judgment is the same for
Plaintiff's EPA retaliation claim as for her Title VII
retaliation claim.  *See Darveau v. Detecon, Inc.*, 515 F.3d 334,
340, 342 (4th Cir. 2008) ("[W]e and other courts have looked to
Title VII cases in interpreting the FLSA"); *Whitten v. City of
Easley*, 62 Fed. App'x 477, 480 (4th Cir. 2003); *see also Conner
v. Schnuck Mkts., Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997);
*Monk v. Stuart M. Perry, Inc.*, Slip Copy, 2008 WL 2901347, at *8
(W.D. Va. July 18, 2008).

To establish a prima facie case of retaliation under
the FLSA, Plaintiff must show that "(1) [she] engaged in an
activity protected by the FLSA; (2) [she] suffered adverse action
by the employer subsequent to or contemporaneous with such
protected activity; and (3) a casual connection exists between
the employee's activity and the employer's adverse action."
*Darveau*, 515 F.3d 334, 340 (*citing Wolf v. Coca-Cola Co.*, 200
F.3d 1337, 1342-43 (11th Cir. 2000); *Conner v. Schnuck Markets,
Inc.*, 121 F.3d 1390, 1394 (10th Cir. 1997).  If Plaintiff can
establish these elements, the burden shifts to Defendants to

26

offer a nondiscriminatory reason for the adverse action.
*Whitten*, 62 Fed. App'x at 480 (*citing Conner*, 121 F.3d at 1394).
If Defendants make such a showing, the burden shifts back to
Pinkett to show that their proffered reasons are pretextual.   *Id.*

As explained fully in section III.A above, Plaintiff
has stated a prima facie case that Defendants retaliated against
her by (1) terminating Plaintiff's employment, (2) filing the
Circuit Court Suit, and (3) filing the Exception to Discharge.
She has also provided sufficient evidence to show that
Defendants' proffered non-retaliatory reasons for their actions
were pretextual.   Defendants' motion for summary judgment on
Count I will be denied.

C.   Calculation of Damages

Defendants also argue that, even if Plaintiff prevails
on her claims, her damages should be reduced because of after-
acquired evidence of misconduct that would have provided them
with grounds to terminate her employment, had they known of it at
the time.   The Court finds that any discussion of damages is
premature at this time.

### IV.   Conclusion

For these reasons, the Court will deny Defendants'
motion.   An appropriate Order will issue.

April 21, 2009                 _____/s/_____
Alexandria, Virginia                    James C. Cacheris
                              UNITED STATES DISTRICT COURT JUDGE